**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LAMONT BRACY, *on behalf of himself and all others similarly situated,* | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:23-cv-05743-TWT |
| AMERICOLD LOGISTICS LLC, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Defendant Americold Logistics, LLC ("Americold" or "Defendant") is a global leader in temperature-controlled warehousing and logistics. Consolidated Class Action Complaint (Doc. 27) (hereinafter "Compl."). Compl. ¶¶ 34-35. Americold stores the Social Security numbers, addresses, driver's license numbers, state identification numbers, passport numbers, financial account information, and employment-related health insurance and medical information ("Private Information") of employment applicants and employees on its network systems. *Id.* ¶ 42. Americold seeks to avoid liability for recklessly exposing Plaintiffs' Private Information to a cybercriminal organization that stole this data and subsequently published it on the dark web (the "Data Breach"). *See id.* ¶¶ 5-6. Plaintiffs allege facts that adequately support Plaintiffs' claims and that support a plausible inference that Americold's failure to safeguard Plaintiffs' Private Information has resulted in concrete injuries. The Court should deny Americold's Motion to Dismiss ("MTD") (Doc. 32) as to all claims.

## II. STATEMENT OF FACTS

Americold requires that Plaintiffs and Class Members supply their Private Information, including Social Security numbers, to Defendant while seeking employment. *Id.* ¶ 43. Americold's Privacy Policy promises Plaintiffs, *inter alia*, that it "ha[s] implemented appropriate technical and organizational security measures designed to protect your Personal Data against . . . unauthorized

disclosure, unauthorized access, and other unlawful or unauthorized forms of Processing, in accordance with applicable law." *Id.* ¶ 41.

Americold discovered in April 2023 that cybercriminals accessed and exfiltrated Plaintiffs' Private Information. *Id.* ¶ 51. Americold waited until December 2023 to notify Plaintiffs of the Data Breach, more than seven months after the Private Information on its networks was accessed, acquired, and published on the dark web. *See id.* ¶¶ 5-6, 53-55, 57. Americold's Data Breach Notice advised victims to "remain vigilant over the next twelve to twenty-four months against potential identity theft and fraud by carefully reviewing credit reports and account statements to endure that all activity is valid." *Id.* ¶ 61.

Not only did Americold know this treasure trove of information was a target for hackers based on industry standards and other breaches (*see, e.g., id.* ¶¶ 78-79, 82-85, 87-88), but Americold had a previous major data breach less than three years before. *Id.* ¶¶ 74-77, 81, 86, 116. This earlier breach put Americold on notice, given that "[r]epeated attacks are actually the norm, not the exception." *Id.* ¶ 77.

## III. LEGAL STANDARD

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Regl. Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff

has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232-33.

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff." *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1311 (N.D. Ga. 2019).

## IV. PLAINTIFFS HAVE ARTICLE III STANDING

To establish standing under Article III of the Constitution, a plaintiff must allege (1) he suffered an "injury in fact" that is concrete and particularized, (2) the injury is "fairly traceable" to the defendant's challenged conduct, and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice …." *Id.* at 561. Plaintiffs have adequately alleged concrete injuries fairly traceable to Defendant's Data Breach.[1]

### A. Plaintiffs have all alleged Concrete Injuries

To establish the injury in fact element of the Article III standing inquiry, "a plaintiff must show that he or she suffered 'an invasion of a legally protected

[1] Defendant challenges the redressability of Plaintiffs' request for injunctive relief, arguing that the requested remedy cannot redress past harm. However, as explained in the GUDPTA and declaratory judgment sections below, Plaintiffs' request for injunctive relief seeks to remedy the substantial risk of future harm.

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

"[I]n *Spokeo*, the Supreme Court also clarified that 'concrete' is not necessarily synonymous with 'tangible' and that intangible injuries can satisfy the requirement of concreteness." *Covington v. Gifted Nurses, LLC*, 2023 WL 5167366, at *5 (N.D. Ga. July 19, 2023) (citing *Spokeo*, 578 U.S. at 340-41). The injury need not be substantial: "a small injury, an identifiable trifle, is sufficient to confer standing." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009). Furthermore, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a ''substantial risk' that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

***i. Plaintiffs have standing because their Private Information was posted to the dark web by cybercriminals.***

"[A] plaintiff whose personal information is subject to a data breach can establish a concrete injury for purposes of Article III standing if, as a result of the breach, he experiences 'misuse' of his data in some way." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023). When personal information is posted to the dark web, the victims have suffered "misuse" sufficient to confer Article III

standing. *See id.* at 889-90 (explaining that this constitutes "both a present injury" and "a substantial risk of future injury").

It has been confirmed that Private Information stolen in the Data Breach was posted to the dark web. *See* Compl. ¶¶ 5-6, 71. Certain Plaintiffs have already received direct notice from third-party service providers confirming that their Private Information was located on the dark web. *See id.* ¶¶ 199, 228. Because all Plaintiffs plausibly allege their information was exposed on the dark web after the Data Breach, they have Article III standing to pursue their claims at this stage.

***ii. Plaintiffs have sufficiently alleged an increased risk of future identity theft.***

The publication of Plaintiffs' data on the dark web is sufficient to create a "substantial risk of future injury." *Green-Cooper*, 73 F.4th at 890. However, the Eleventh Circuit has also "specifically held that 'evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach."' *Briggs v. N. Highland Co.*, 2024 WL 519722, at *6 (N.D. Ga. Feb. 9, 2024) (quoting *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021)).

To determine if a substantial risk of harm exists, courts generally first look to "the alleged motive of the unauthorized third-party who received access to the plaintiffs' sensitive information." *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1251 (M.D. Fla. 2019). Where hackers have

intentionally stolen Private Information, courts find that plaintiffs face a substantial risk of a certainly impending injury because "a primary incentive for hackers is 'sooner or later[ ] to make fraudulent charges or assume those consumers' identities[.]'" *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (citation omitted); *see also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x. 384, 389 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints."). Here, hackers intentionally stole data and published it on the dark web. *See* Compl. ¶¶ 5-6, 53.

Second, courts consider the sensitivity of the particular data set that is compromised in the breach. *See In re 21st Century Oncology*, 380 F. Supp. 3d at 1253. Here, Plaintiffs' full names, addresses, Social Security numbers, driver's license numbers, state identification numbers, passport numbers, financial account information, health insurance information and medical information were stolen in the Breach. This data can—and will—be used to commit identity theft. *See In re Equifax*, 999 F.3d at 1262 ("Given the colossal amount of sensitive data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements.").

A third consideration in determining if a substantial risk of harm exists is whether there "is evidence that a third-party has accessed the sensitive information and/or already used the compromised data fraudulently." *In re 21st Century Oncology*, 380 F. Supp. 3d at 1254. The Eleventh Circuit has recognized that when at least some plaintiffs allege actual misuse of their data, they not only establish a concrete injury that confers standing, but also "support the sufficiency of *all* Plaintiffs' allegations …." *Equifax*, 999 F.3d at 1263 (emphasis in original). The risk of identity theft is not speculative here because the stolen data has already been published on the dark web.[2] Compl. ¶¶ 5-6. In sum, Plaintiffs satisfy each of the three hallmarks of the cases in which courts have concluded that plaintiffs demonstrated a substantial risk of harm.

***iii. Mitigation efforts are an injury-in-fact.***

Because Plaintiffs face a substantial risk of additional harm from the Data Breach, the time and money that they have spent mitigating this risk constitutes additional concrete injuries. The Eleventh Circuit explained, "when a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries." *In re Equifax*, 999 F.3d at 1262. Because Plaintiffs here have demonstrated an increased risk of identity theft, they may also recover

[2] For this reason, Defendant's reliance on *Tsao* is misplaced. *See Green-Cooper*, 73 F.4th at 889–90 ("The fact that hackers took credit card data and corresponding personal information from the Chili's restaurant systems and affirmatively posted that information for sale … is the misuse … that we said was missing in *Tsao*.").

for "injuries incurred while mitigating a risk of harm, such as purchasing a credit freeze or spending time or effort to minimize a risk of identity theft." *Id.*

Plaintiffs have spent time mitigating the substantial risk of harm from the Data Breach, and Plaintiff Samuels has incurred out of pocket expenses on credit monitoring. *See* Compl. ¶¶ 181, 188, 198, 203, 212, 216, 225, 228-29, 237, 241, 248, 252, 260, 263. Plaintiffs will need to continuously monitor their credit and financial accounts to mitigate the risk of identity theft and fraud. *See id.* The risk and necessity of mitigation is amplified by Defendant's inadequate response to the Data Breach and advising Plaintiffs to remain vigilant against incidents of identity theft. Under these circumstances, it "would be unreasonable" to expect Plaintiffs to "wait for actual misuse." *See Galaria*, 663 F. App'x at 388.

***iv. Lost benefit of the bargain is an injury-in-fact.***

Plaintiffs relied on Americold to implement and maintain adequate security to keep their Private Information safe from unauthorized disclosure. *See* Compl. ¶¶ 49, 59, 69. Had Plaintiffs known of Americold's insufficient data security measures, they would not have willingly provided their information to Americold. *See id.* ¶ 192-193, 207-208, 220-221, 232-233, 244-245, 258, 326, 351, 357, 384.

"When a person hands over sensitive information, in addition to receiving a job, good, or service, they presumably expect to receive an implicit assurance that the information will be protected." *Castillo v. Seagate Tech., LLC*, 2016 WL

9280242, at *9 (N.D. Cal. Sept. 14, 2016). Moreover, Defendant's privacy policy supports an implied bargain for data security. *Compare* Compl. ¶¶ 37-41, 333-37 *with Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) ("TransPerfect's privacy policies and security practices manual—which states that the company 'maintains robust procedures designed to carefully protect the PII with which it [is] entrusted'—further supports a finding of an implicit promise").

The lost benefit of an implied bargain for data security is concrete injury. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that [d]efendants failed to meet their representations about data security,' courts have consistently held these allegations sufficient to allege injuries in fact.") (internal citation omitted); *Kostka v. Dickey's Barbecue Rests., Inc.*, 2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) (similar).

***v. Diminution in value of Private Information is an injury-in-fact***

Private Information is a valuable commodity, and because Plaintiffs' Private Information is now in the hands of criminals and Plaintiffs have lost control over it and who may use it, it is less valuable. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) ("[T]he growing trend … is to recognize the lost property value of this information.") (collecting cases).

As explained in *Marriott*, "common sense" compels an acknowledgement that Private Information has value "in our increasingly digital economy," where companies collect personal information for business purposes. *Id.* at 462.

The actual value of Plaintiffs' Private Information is a factual question to be determined at a later stage in this case. Plaintiffs are not required to allege that they attempted to sell their Private Information or "were forced to accept a decreased price for their information." *Id.* (recognizing that "the value of consumer personal information is not derived solely (or even realistically) by its worth in some imagined market place where the consumer actually seeks to sell it to the highest bidder, but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check."); *accord In re Mednax*, 603 F. Supp. 3d at 1204.

***vi. Loss of privacy is an injury-in-fact.***

"A violation of the right to privacy necessarily entails an injury…. That remains true whether or not the tortfeasor does anything with the information collected; indeed, it remains true whether the victim knows about it or not." *Peterson v. Aaron's, Inc.*, 2017 WL 4390260, at *3 (N.D. Ga. Oct. 3, 2017); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("Various intangible harms can also be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion.").

"Unauthorized disclosure of plaintiff's [Private Information] to third parties is analogous to the common-law tort of invasion of privacy based on public disclosure of private facts." *Merrell v. 1st Lake Properties, Inc.*, 2023 WL 6316257, at *3 (E.D. La. Sept. 28, 2023) (citing persuasive authorities, including *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285 (2d Cir. 2023)); *see also Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) (finding standing based on the theft of medical information, regardless of the risk of harm). The theft of Plaintiffs' Private Information—including their Social Security numbers and medical information—caused privacy injuries sufficient to confer standing.

### B. Plaintiffs Samuels and Branden Taylor's Dark Web Injury is traceable to the Data Breach

"Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

Plaintiffs Samuels and Branden Turner allege that they were required to provide their Private Information to Americold when applying for employment (Compl. ¶¶ 192, 220); Defendant held their Private Information on its servers, which were hacked (*id.* ¶¶ 42-49, 51-56); six-gigabytes of data from the Data Breach

was published on the dark web (*id.* ¶¶ 5-6); and, although Plaintiffs took care to secure their Private Information it was published on the Dark Web following the Data Breach (*id.* ¶¶ 195, 199, 223, 228). Under *Resnick*, these allegations are sufficient to satisfy the low threshold of the traceability requirement at the motion to dismiss stage. Courts have repeatedly rejected factual challenges like those made by Defendant at the pleadings stage, finding that the courts ordinarily must give plaintiffs an opportunity for discovery and for an appropriate summary judgment hearing. *In re Mednax*, 603 F. Supp. 3d at 1205-08.

This is particularly true here, where Defendant doesn't offer any new information acceptable at the pleadings stage or expert testimony in support of its factual challenges to traceability, but instead only makes unsupported, speculative argument. Courts have denied challenges to traceability under similar circumstances. *See MSP Recovery LLC v. Progressive Select Ins. Co.*, 2015 WL 10457208, at *2 (S.D. Fla. May 18, 2015) ("At the motion to dismiss stage, the Court finds it inappropriate to resolve this factual dispute …. In so ruling, the Court finds that it is prudent to address the standing issue at the summary judgment stage, where the Court may consider the entire factual record ….").

## V. PLAINTIFFS ADEQUATELY STATE CLAIMS FOR RELIEF

### A. Plaintiffs Adequately State a Claim for Negligence

#### *i. The leaking of Plaintiffs' Private Information on the Dark Web is a cognizable damage proximately caused by Defendant.*

Defendant cannot reasonably dispute causation; Plaintiffs squarely allege that the leaking of their Private Information on the Dark Web resulted from this particular Data Breach. Defendant ignores that the Cactus ransomware group reported leaking six (6) gigabytes of data obtained during the Data Breach.[3] Compl. ¶¶ 5-6. As for injury, "in *Collins v. Athens Orthopedic Clinic, P.A.*, the Georgia Supreme Court recognized a cognizable injury where a criminal theft of the plaintiffs' personal data allegedly put them at an imminent and substantial risk of identity theft." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023) (citing *Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310, 316-18 (Ga. 2019)). *Collins* made clear that allegations of actual identity theft or fraud are not required; the imminent and substantial risk of identity theft is enough. *See Collins*, 837 S.E. 3d at 563 n.8 ("Our conclusion also does not depend on the allegation that one named plaintiff already has experienced identity theft.").

In *Tracy v. Elekta, Inc*, Judge Grimberg held that for purposes of stating a negligence claim in the data breach context, "an injury exists where, at the very least, criminals have hacked into a data system and exfiltrated personally

---

[3] Defendant acknowledges that Plaintiffs Turner and Samuels allege that Experian reported their Private Information had been disseminated on the Dark Web, but does not address or discuss the broader allegation that the Cactus ransomware group reported leaking six (6) gigabytes of data obtained during the Data Breach.

identifiable information and protected health information." 667 F. Supp. 3d 1276, 1283 (N.D. Ga. 2023). Judge Grimberg further explained,

> That conclusion is consistent both with *Collins* and common sense. Once criminals have stolen personal data, they can offer it for sale, hold it for ransom, or use it for any other criminal purpose they desire. There is no meaningful difference at the motion to dismiss stage between data that is in the hands of criminals and data that plaintiffs know exists on the dark web; both present an imminent and substantial risk of harm ….

*Id.* In *Purvis v. Aveanna Healthcare, LLC*, Judge May reached the same conclusion, finding that *Collins* confirmed that a legally cognizable injury arises for purposes of stating a negligence claim where the plaintiff allegedly "faced a sufficiently imminent and substantial risk of such identity theft because their information had been stolen by criminals and allegedly made available on the dark web." 563 F. Supp. 3d 1360, 1371 (N.D. Ga. 2021) (citing *Collins*, 837 S.E.2d at 311-12, 315-19); *see also Briggs*, 2024 WL 519722, at *9 (allegations of "substantially increased risk of identity theft" and "information being found on the dark web" were adequate to state claims for negligence and negligence *per se* under the FTC Act); *Baker v. ParkMobile, LLC*, 2023 WL 6536191, at *4 (N.D. Ga. Sept. 29, 2023) (finding plaintiffs "adequately pled sufficient injury or causation … (based on the allegations of misuse of stolen data and information being found on the dark web) to state a claim for negligence per se under the FTCA").

Defendant ignores these cases and instead relies on *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967 (N.D. Ga. July 22, 2022), for the overly broad proposition that an increased risk of future harm following a data breach does not constitute legally cognizable damage. MTD at 15. *Everhart* does not stand for this proposition, which is squarely at odds with the cases discussed *supra*. *Everhart* is distinguishable because of the limited data stolen and there were no allegations of misuse. *See Everhart* at *1, 3 ("Plaintiffs fail to allege that their data has actually been sold on the black market ...."). Here, the posting of Plaintiffs' Private Information is the misuse that was missing in *Everhart*. Because the exfiltration and posting of Plaintiffs' and Class Members' Private Information put them at an imminent and substantial risk of identity theft, they have stated claims for negligence and negligence *per se* under Georgia law.

***ii. The cost of credit and identity monitoring is a cognizable damage.***

Defendant does not cite any data breach cases applying Georgia law refuting that past and future time, effort, and the costs of credit and identity theft monitoring are cognizable damages where they arise from the exfiltration and leaking of Social Security numbers and other Private Information on the dark web.

In *Equifax*, the Eleventh Circuit explained that "when a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk," which includes "purchasing credit monitoring," are also "concrete injuries." *In re*

*Equifax*, 999 F.3d at 1262-63. The Georgia Supreme Court subsequently confirmed that "allegations that [a] breach has cause[d] [plaintiffs] to spend money attempting to mitigate the consequences of the breach by avoiding identity theft … may represent all or some measure of the plaintiffs' damages." *Collins*, 837 S.E. 2d at 316. Plaintiff Samuels pays $30 per month for Dark Web monitoring through Experian. Compl. ¶ 228. All Plaintiffs allege that they seek the retail cost of credit monitoring and identity theft monitoring, which can cost around $200 per year, for a minimum of five years. *Id.* ¶ 175. These costs are "some measure of the plaintiffs' damages." *Collins* at 316.

Nor does Defendant cite any data breach cases applying Georgia law refuting that lost time constitutes cognizable damage when spent mitigating the same risk. In *Briggs*, discussing Article III standing, Judge Jones, citing *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023), held that "concrete injuries include 'not only straightforward economic injuries, like lost money, but also more nebulous ones, like ***wasted time***, missed credit opportunities, and emotional distress.'" *Briggs*, 2024 WL 519722, at *7 (quoting *Walters*, 60 F.4th at 648) (emphasis added).

In *Collins*, the Georgia Supreme Court recognized this Court's opinion in *In re Equifax*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019), as "persuasive" in identifying "time and effort to monitor … credit and identity" among the allegations of "actual injury" that were "sufficient to support a claim for relief." *Collins*, 837 S.E. 2d at

317 (quoting *In re Equifax*, 362 F. Supp. 3d at 1315). Plaintiffs' lost time mitigating the risk of additional harm from the Data Breach constitutes cognizable damages.

***iii. Plaintiffs may recover nominal damages.***

Georgia law allows for the recovery of nominal damages on tort claims. *See* Ga. Code Ann. § 51-12-4 ("If an injury is small or the mitigating circumstances are strong, nominal damages only are given."). As explained above, Plaintiffs have alleged at least a "small" injury arising from the Data Breach. Accordingly, they may seek at least nominal damages on their negligence claim.

**B. Plaintiffs Adequately State a Claim for Negligence Per Se**

Defendant next argues that Plaintiffs are not within the class of persons that Section 5 of the FTC Act was intended to protect because Plaintiffs are current and former employees, a beneficiary of a current or former employee, and job applicants. In *Covington*, Judge Calvert rejected Defendant's position:

> While the question of whether a plaintiff falls into the class of persons protected by a federal statute or regulation is a state law question, regulatory action by the administrative agency tasked with interpreting and enforcing such statutes and regulations is no doubt probative of the answer, if not worthy of deference under state law. Moreover, at least one other court applying similar state law, has found job applicants who suffered harm from a data breach covered by negligence per se in data breach cases. Based on the foregoing, the Court finds that at the pleadings stage, Ms. Covington has adequately alleged she is among the class of persons intended to be protected by the FTC Act, and therefore has stated a claim for negligence per se.

2023 WL 5167366, at *9 (internal citations omitted). Defendant does not attempt to distinguish persuasive authority from this District. Based on this District's precedent, Plaintiffs claims for negligence *per se* should survive.

### C. Plaintiffs Adequately State a Claim for Breach of Implied Contract

An implied-in-fact contract is one not created or evidenced by distinct and explicit language; it is inferred by the law as a matter of reason and justice. *Classic Restorations, Inc. v. Bean*, 272 S.E.2d 557, 562 (Ga. Ct. App. 1980). Whether an implied contract exists "is a question of fact . . . which must generally be left to the jury for determination." *Tatum v. Moss*, 198 S.E. 814, 815 (Ga. Ct. App. 1938).

Plaintiffs allege that "Defendant's 2021 Privacy Notice, which applies to 'applicants for employment,' provides that Defendant 'collect[s] or obtain[s] Personal Data about you … when you submit a job application.'" Compl. ¶ 333. Plaintiffs further allege "Defendant's 2021 Privacy Notice states that Defendant 'implement[s] appropriate technical and organizational security measures to protect your Personal Data against accidental or unlawful destruction, loss, unauthorized disclosure, unauthorized access, and other unlawful or unauthorized forms of Processing, in accordance with applicable law.'" *Id.* ¶ 335. Chief Judge Batten previously concluded under nearly identical circumstances that "Plaintiffs have alleged sufficient information to allow a plausible inference that Americold intended to bind itself to protect Plaintiffs' information." *Sheffler v.*

*Americold Realty Tr.*, 2024 WL 470250, at *5 (N.D. Ga. Jan. 16, 2024). This case—which even includes one of the same Plaintiffs—is no different.

Like it did in *Sheffler*, Defendant argues the "2021 Privacy Notice does not demonstrate that Plaintiffs and Americold reached a meeting of the minds …." MTD at 19. However, Chief Judge Batten found allegations about the *same* Privacy Notice sufficient to support the existence of an implied contract. *See Sheffler*, 2024 WL 470250, at *5 ("[C]ourts have found that plaintiffs state a claim for breach of implied contract by pointing to a document such as a privacy policy that indicates a defendant's intent to protect the personal information of employees or employment applicants. Plaintiffs have made sufficient allegations to state a claim for breach of implied contract.") (internal citations omitted). The court rejected the argument that the date of the 2021 Privacy Policy negates its relevance. *See id.*

Defendant also contends that certain Plaintiffs (Bracy, Samuels, and Vincent) have not alleged an exchange of consideration sufficient to support the existence of a contract. *See* MTD at 20. However, Plaintiffs' Private Information is valuable intangible property, and in exchange for receiving this property, Defendant agreed to consider them for employment. Implied in this exchange is a promise to keep Plaintiffs' Private Information secure. *Compare* Compl. ¶¶ 178-79, 182, 190, 220-23, 231, 256, 258 *with Perry v. Bay & Bay Transport. Servs., Inc.*, 650 F. Supp. 3d 743, 757 (D. Minn. 2023) ("Bay & Bay provided consideration by

promising to consider Perry for employment, while Perry provided consideration by providing valuable property, his PI.”).

Given Defendant’s inability to cite any authority that the entrustment of sensitive personal information to a prospective employer is insufficient consideration, particularly where the prospective employer publishes a privacy policy promising the safeguard that information, Plaintiffs Bracy, Samuels, and Vincent should be permitted to proceed with their implied contract claim.

**D. Plaintiffs Adequately State a Claim for Unjust Enrichment**

Defendant states that “[t]here are no allegations in the Complaint from which it can be plausibly inferred that Plaintiffs conferred a benefit on Americold … by providing Americold with their personally identifiable information.” MTD at 21. However, as explained above, Plaintiffs’ Private Information is “valuable property.” *See Perry*, 650 F. Supp. 3d at 757. The conferral of this valuable property upon Defendant is a direct benefit permitting Defendant to operate its business.

In addition to the value of Plaintiffs’ Private Information, Defendant was enriched by the savings it enjoyed from not implementing and maintaining adequate data security. Courts regularly decline to dismiss unjust enrichment claims in this context. *See, e.g., Sackin*, 278 F. Supp. 3d at 751; *Lurry v. PharMerica Corp.*, No. 3:23-CV-297-RGJ, 2024 WL 2965642, at *7 (W.D. Ky. June 12, 2024).

Defendant argues the savings it experienced from neglecting its data security is not a direct benefit. However, the claim of unjust enrichment is centered around the principle that a party should not be allowed to benefit at another's expense without making restitution for the value received. This principle applies irrespective of whether the benefit conferred was direct or indirect. *See Emergency Coverage Corp. v. Ambetter of Peach State, Inc.*, No. 19CV01308-JFL003, 2020 WL 4726928, at *3 (Ga. Super. Apr. 21, 2020) ("[T]he enrichment defendant receives may be direct or indirect.").[4] It would be unjust for Defendant to retain the benefit of Plaintiffs' Private Information or the money it saved neglecting its data security.

**E. Plaintiffs Adequately State a Claim Under O.C.G.A. § 13-6-11**

Americold's wholly insufficient data security allowed not one, but two data breaches to occur permitting cyber thieves to steal and publish Plaintiffs' and Class Members Private Information. Compl. ¶¶ 5-6, 81. Americold was on notice of its poor data hygiene. Allegations that a defendant's cybersecurity was deficient, and that defendant knew about the deficiencies and should have taken steps to increase security but did not, are sufficient for a claim under the bad faith prong of O.C.G.A. § 13-6-11. *See id.* at ¶¶ 74-88 (Plaintiffs allege that Defendant was on

[4] Federal courts have held the same. *See Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1363 (N.D. Ga. 2018) ("[T]he conferral of direct benefit … is not required to adequately plead … unjust enrichment."); *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1367 n.27 (N.D. Ga. 2012) (similar); *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010) (similar).

notice of industry standard measures required to protect Plaintiffs' Private Information. The Data Breach was foreseeable because Defendant reported a prior data breach in 2020 where threat actors gained access to its network and that the repeated breach of Americold's systems shows its flawed data security and continuous disregard of its duties to protect Plaintiffs' Private Information; Defendant knew its computer systems and network were a target for data theft because it had already been breached and failed to tighten up its data security).

The allegations squarely match the threshold pleading requirements discussed by this Court in *Equifax*, 362 F. Supp. 3d at 1345 (plaintiffs' allegations that defendants knew of severe deficiencies in cybersecurity and of serious threats but declined to act supports claim of bad faith under O.C.G.A. § 13-6-11). Notwithstanding, dismissal of the claim is premature because the plain terms of the statute make it a matter left to the jury. O.C.G.A. § 13-6-11; *see also Covington Square Assocs., LLC v. Ingles Mks., Inc.*, 287 Ga. 445, 446 (2010) (liability under O.C.G.A. § 13-6-11 is "solely for the jury's determination").

### F. Plaintiffs Adequately State a Claim for Violations of the GUDTPA

The GUDTPA authorizes injunctive relief where a person "is likely to be damaged by a deceptive trade practice…under the principles of equity." O.C.G.A. § 10-1-373(a). The GUDTPA does not require proof of monetary damage, loss of profits, or intent to deceive. *Id.* Moreover, "to prevail in an action" under the

GUDTPA, "a complainant need not prove … actual confusion or misunderstanding." Ga. Code Ann. § 10-1-372(b). Thus, neither Defendant's intent nor Plaintiffs' reliance are elements required to state a claim under the GUDTPA.

Defendant argues that Plaintiffs' claims fail to satisfy the Rule 9(b) pleading standard. However, Plaintiffs allege specific misrepresentations in Defendant's privacy polices. *See* Compl. ¶¶ 37-41, 333-35. Plaintiffs also allege Defendant engaged—and continues to engage—in deceptive omissions. *Id.* ¶¶ 388-90. Such allegations provide Defendant notice about the particulars of this claim.

Defendant cites *Willingham v. Global Payments, Inc.*, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013), an unadopted and unpublished Report and Recommendation, for the proposition that the GUDTPA requires reliance. MTD at 18. The *Willingham* GUDTPA claim alleged that the defendant's past representations and breach notification created a likelihood of confusion and misunderstanding. *Willingham* at *15-16. The court merely explained that even if the plaintiffs did plead they read and relied on defendant's representations, that would only demonstrate past harm which is not the basis for injunctive relief under the GUDTPA.[5] *Id.*

In this case, Plaintiffs allege more than past harm. Their Private Information remains at risk in Defendant's possession. *See* Compl. ¶¶ 19, 137, 176, 189-90, 204-

---

[5] Although not required, Plaintiffs have alleged reliance. *See* Compl. ¶¶ 37-41, 70, 258, 326, 351, 357, 381-84, 386-89. *Cf. Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 371876, at *17 (N.D. Ga. Jan. 30, 2024) (finding omission based reliance).

05, 217-18, 230-31, 242-43, 253-54, 265. Importantly, this was not the first cybersecurity breach of Defendant's systems in recent history *Id.* ¶¶ 74-75. Moreover, Defendant has not provided sufficient notice identifying the remedial measures that will protect the data from future attack. *Id.* ¶ 388. Absent the relief requested through this claim, Defendant will continue to misrepresent and imply that its data security practices are adequate. *Id.* ¶¶ 388-90. Plaintiffs' allegations of ongoing and future harm are sufficient to support their GUDTPA claim. *Cf. Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d. 1277, 1295 (N.D. Ga. 2018) (finding plausible likelihood of ongoing harm from defendant's deceptive trade practices).

For these reasons, the Court should decline to dismiss the NGUDTPA claim.

**G. Plaintiffs Adequately State a Claim for Declaratory Judgment**

"[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Federal courts in Georgia—including this Court—have exercised this discretion to allow claims for declaratory judgment and injunctive relief after a data breach. *See Baker v. ParkMobile, LLC*, 2022 WL 3704003, at *10 (N.D. Ga. Aug. 19, 2022) (citing *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016)); *see also In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *14-15

(N.D. Ga. Mar. 5, 2018). Declaratory judgment is particularly appropriate here, given that it is Defendant's second major data breach in a short period of time.

Defendant argues the declaratory judgment claim should be dismissed because Plaintiffs already have an adequate remedy at law. However, "[t]he existence of another adequate remedy does not preclude a declaratory judgment." Fed. R. Civ. P. 57. "And motions to dismiss test validity of claims, not redundancy." *Gilbert v. BioPlus Specialty Pharm. Servs., LLC*, 2023 WL 3555006, at *4 (M.D. Fla. Mar. 3, 2023) (sustaining declaratory judgment claim in data breach action). Furthermore, resolution of Plaintiffs' claims for damages will not clarify Defendant's prospective obligations. *See Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, at *7 (S.D. Ohio Jan. 26, 2023) ("[W]hile Plaintiffs' other claims would allow for an award of damages, they will not clarify the prospective obligations MHS may have to protect their PII and PHI. In that regard, only a declaratory judgment claim could provide Plaintiffs with complete relief."); *see also In re The Home Depot*, 2016 WL 2897520, at *5 (sustaining request for declaration regarding continuing duties). Accordingly, the Court should decline to dismiss Plaintiffs' declaratory judgment claim.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated: July 5, 2024

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
Justin C. Walker
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
GIBSON CONSUMER LAW GROUP, LLC
Georgia Bar No. 725843
4729 Roswell Road
Suite 208-108
Atlanta, GA 30342
Phone: 678.642.2503
*marybeth@gibsonconsumerlawgroup.com*

Gary M. Klinger (*pro hac vice*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
*gklinger@milberg.com*

John A. Yanchunis (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
*jyanchunis@forthepeople.com*

*Plaintiffs' Interim Co-Lead Counsel*

Ryan D. Maxey (*pro hac vice*)
MAXEY LAW FIRM, P.A.
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
*ryan@maxeyfirm.com*

John J. Nelson (*pro hac vice*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

*Counsel for Plaintiffs and the Proposed Class*

**LOCAL RULE 7.1(D) CERTIFICATION**

In accordance with LR 7.1(D), undersigned counsel hereby certifies that the foregoing brief has been prepared in 13-point Book Antiqua, one of the fonts and sizes permitted by LR 5.1(C).

*/s/ Terence R. Coates*
Terence R. Coates